55 CCPA

**Application of Claus L. SPORCK.**
**Patent Appeal No. 7805.**

United States Court of Customs
and Patent Appeals.
Nov. 24, 1967.
Rehearing Denied Jan. 4, 1968.

Frederick J. Olsson, Philadelphia, Pa., for appellant.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This appeal is from the decision of the Board of Appeals affirming the rejection of claims 23, 24, 25, 26 and 28 of appellant's application serial No. 121,653, filed July 3, 1961, for "Metal Working." Seven claims stand allowed.

The invention relates to working strip or sheet metal with a roller. Appellant states that conventional working of strip or sheet involves use of a roller which extends all the way across the strip. With that method, the roller is said to bow, resulting in there being a crown on the strip and a variation in thickness. Grinding or machining is required to eliminate those effects.

The specification states:

The basic concept of the invention is to carry out the working so that the sheet or strip is reduced in very small increments. According to the invention, sheet or strip is engaged with a roller within a limited contact area and the roller is moved into the sheet so that one small increment after another is displaced or reduced. With an incremental quantum of material being worked at any instant, the force required for working is proportionately smaller. This minimizes the possibility of distortion of the roller, the support and the connected mechanism. Thus the space between the support surface and the roller working surface (this space determining thickness) can be very closely maintained. The reduction of the increments takes place progressively along a path extending from one edge of the sheet to the other and this kind of reduction is repeated successively along other parallel paths which are spaced from the first path in a direction normal thereto. * * *

In one form of the invention, a sheet of rolled stock is clamped at one longitudinal edge to the work table of a conventional shaper and a narrow roller is mounted on a tool holder on the ram of the machine with its rotational axis perpendicular to the clamped edge. The tool holder with the roller is adapted to reciprocate back and forth in a longitudinal direction while the table with the clamped work sheet is adapted for stepwise

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

transverse movement. The details of the method are best explained with reference to Figures 2 and 3 of the application drawings, reproduced below:

Fig. 2.

Fig. 3.

The ram carrying the roller is operated so that the roller 3 is moved from the position shown in Fig. 2 in a direction indicated by the arrow f–1 toward the edge 15 to engage the sheet 12 and then moved along the path indicated by the dotted line 17a. The space between the roller and support is set so that the roller in moving along the path 17a displaces the metal and forms a groove as indicated by dotted line 17b in Fig. 3. After it passes out of contact with the edge 16, the roller is stopped and the work table carrying the strip is moved to the left to the location which results in the dotted line 18 being positioned to be engaged by the roller. With the work held fixed in the new position, the roller is then moved in the direction of the arrow r–1 so as to travel along the path 18a to widen the groove 17b as indicated at 18b in Fig. 3. The same steps are repeated with the roller moving along the paths 19a, 20a and so on until the edge 14 of the sheet is reached. The process results in the sheet, except for the clamped edge

13, being reduced in thickness from T–1 to T–2 as shown in Fig. 3 and increased in width from W–1 to W–2 as shown in Fig. 2.

As a modification, the application discloses producing a sheet having ribs on one side. That is accomplished by rolling increments of the sheet to one predetermined thickness over spaced areas to form the ribs and to a lesser thickness in the intervening areas between the ribs. Other modifications are also disclosed, including a process for providing a taper in the cross section of the strip and another for providing a sheet with "a checker-board design pattern, i. e., a series of hills and valleys."

Claims 24, 25, 26 and 28 read:

24. A method of providing precise thickness dimension in metal sheet or strip stock comprising the steps of:
taking a substantially flat piece of stock;

working the stock to reduce its thickness to a desired dimension by rolling

adjacent increments of the stock to reduce the same to the desired thickness dimension, the reducing being progressive along a path lying in a plane containing the thickness dimension of the stock, the width of each said increment taken in a direction normal to said plane being substantially less than the total width of the portion of the stock to be reduced and the reduction along the path causing the stock to expand in a direction normal to the plane; and

continuing said working by performing second said step successively on respectively adjacent areas of the stock, the path of each repeat step being parallel to said plane and spaced from the plane in a direction normal to the plane, the worked portion of the stock having said desired thickness dimension.

25. A piece of stock made in accordance with the method of claim 24.

26. The method of claim 24 wherein the portion of the stock being worked is maintained in planar form.

28. A method of providing ribs on sheet or strip stock, comprising the steps of:

taking a substantially flat piece of stock;

working the stock by rolling to reduce the thickness of adjacent increments of the stock, the reducing being done along a path lying in a plane containing the thickness dimension of the stock, the width of each said increment taken in a direction normal to said plane being substantially less than the total width of the portion of the stock to be reduced and the reduction along the path causing the stock to expand ,in a direction normal to the plane; and

repeating last said step successively in respectively adjacent areas of the stock, the path of each repeat step being parallel the said plane and spaced from the said plane in a direction normal to the plane and performing the repeat steps in discrete spaced apart areas to form spaced sections and portions connecting the sections, the sections and portions extending parallel said plane, the thickness of the spaced sections being greater than the thickness of the connecting portions whereby the spaced sections constitute ribs.

Claim 23 is similar to claim 24 with the additional recitation of "the reducing being done on one face of the stock."

The only reference before us is:

Weiss (Germany) 360,767 October 6, 1922

Weiss discloses a method of reducing the thickness of a portion of a metal plate by rolling. For a better understanding of the method, Figures 3, 5, 6 and 7 of that reference are reproduced below:

Abb. 3.

Abb. 5. Abb. 6.

Abb. 7.

As shown in Figure 3, the plate portion to be reduced is passed between the "conical" roll O, which is actually frustoconical in shape, and the supporting roll U to produce the configuration shown in Figure 5. Weiss discloses that the rolling action may be repeated to cover an area and that a plurality of rolls may be used as an alternative. It states concerning the rolls:

> Their tapered portion, however, is pointed towards the outer edge of the material being rolled, towards which the displacement of material also takes place, on the one hand due to the arrangement of the conical rolls, and on the other hand because, according to experience, the material being rolled always takes the course of least resistance, the resistance here actually being minimal in the direction of the edge.

The reference describes the repeated rolling as follows:

> The arrow i in Fig. 3 indicates the direction of the material displacement, and arrow k in Fig. 4 indicates the direction of rolling. According to the breadth of the strip to be produced, this rolling is repeated several times, the plates being shifted accordingly on carriage n for this purpose. The margin then looks as shown in Figs. 5 and then 6. If the upper roll o is replaced by a smooth roll like roll u, then a margin is achieved as is represented in Fig. 7.

\* \* \*

With respect to the ultimate attainment of a sheet having smooth surfaces on both sides, Weiss discloses:

> The working procedure can accordingly be performed by first pre-rolling a number of plates with the conical roll, then replacing the latter with smooth rolls and rolling the plates further therewith; or else by arranging the smoothing rolls directly behind the profiled rolls and thus performing the complete rolling in one procedure.

The examiner rejected claims 23, 24 25 and 28 as "fully met by Weiss (35 U.S.C. 102)" and claim 26 as "unpatentable (obvious) over Weiss (35 U.S.C. 103)."

Appellant grounds his principal argument on the meaning of the word "adjacent." He states that the claims on appeal use that word "to describe the reduction as the roller moves along a path" and also "to describe the relationship between successive paths." He continues:

> It is contrary to common sense and to the dictates of the disclosure that anyone would practice the invention by moving the roller along a path while at the same time moving it up and down to get peaks between increments. This would destroy the objective of the invention.
>
> One skilled in the art would practice the invention by interpreting the word "adjacent" for spacing between the paths as meaning "no peaks between the paths".
>
> It would be contrary to the disclosure for one to practice the invention by spacing the paths to get peaks between the paths. This would destroy the whole objective of the invention.
>
> It is obvious from the specification and drawings that the word "adjacent" has a meaning as described above. There are three portions of the specification which dramatically emphasize this.

Appellant then sets forth portions of his specification, including part of that quoted hereinabove, which state that the reduction paths of the roller are relatively close and that each path is small.

However, no error is seen in the view of the examiner and the board that the appealed claims do not distinguish over Weiss by the use of the word "adjacent." So far as the reduction by the roller as it moves along each path is concerned, the relationship between adjacent increments in Weiss is obviously the same as with appellant's method and the word "adjacent" thus is clearly met. The areas

of the successive passes of the roller in Weiss also appear to meet any requirement of the word "adjacent," it being apparent that Weiss does not teach leaving unrolled any space between the areas covered by such passes of his "conical" roller. While peaks result from the shape of the roller, they are *in* the adjacent areas rather than *between* them. Further, as pointed out by the board and conceded by appellant in his brief, the height of the peak shown at the right of Weiss' Figure 6 is smaller than the original thickness of the material. That condition is further evidence that no unrolled area is left between the successive rolled areas in the reference.

 It is apparent that appellant is relying on the word "adjacent" to distinguish the size and shape of his roller from the "conical" and apparently wider roller of Weiss, a significance it plainly does not have. Also he appears to be relying on the specification to impart to the claims limitations not recited therein. Such reliance is ineffective to define over the prior art. In re Lundberg, 244 F.2d 543, 44 CCPA 909.

Appellant has provided copies of three patents which relate to subject matter similar to that involved here and use the word "adjacent" in certain claims. Those patents are not considered significant here, it being apparent that they are not authority for assigning any particular meaning to "adjacent" in the present case.

Appellant seems to see some significance in the reference in claims 24, 25 and 26 to the stock being "reduced to" and "having" a "desired thickness dimension." It is apparent, however, that "desired" does not distinguish from the thickness dimension which Weiss desires to provide with the corresponding steps of his method.

It is further urged by appellant that claim 28 is not met by Weiss because of its recitation of performing the repeat steps in "discrete spaced apart areas to form spaced sections and portions connecting the sections." We do not agree. Repeated rolling steps over adjacent areas in Weiss will result in a plurality of spaced apart raised portions with lower connecting portions therebetween and thereby meet the terms of the claim.

 Appellant's arguments depend essentially on the meaning of "adjacent" and raise no points with respect to claims 25 and 26 other than those relied on with regard to base claim 24. Moreover, separate consideration of claims 25 and 26 compels the conclusion that their rejection, like that of the other appealed claims, is free of reversible error.

The decision is affirmed.

Affirmed.